# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA SAAVEDRA, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>GMAC MORTGAGE, LLC, et al.<br><br>　　　　　　　　Defendants. | CASE NO. CV 07-7050 AG (CTx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FURTHER CORRECTED THIRD AMENDED COMPLAINT** |

　　This case, like many others before this Court, involves the sale of an option adjustable-rate mortgage loan ("ARM"). Defendants RBS Financial Products, Inc. (formerly known as Greenwich Capital Financial Products, Inc.) and Greenwich Capital Finance Products, Inc. (collectively the "RBS Defendants") filed a Motion to Dismiss Claims One, Two, and Four of Plaintiff's Further Corrected Third Amended Complaint (the "TAC") (the "RBS Motion") . (Docket Entry ("D.E.") 168.) Defendants Deutsche Bank National Trust Company, as trustee of Harborview Mortgage Loan Trust 2006-SB1 ("Deutsche Bank"), and Harborview Mortgage Loan Trust 2006-SB1 ("Harborview Trust") joined in the RBS Motion. (D.E. 171.) Defendant Secured Bankers Mortgage Company d/b/a SBMC Mortgage ("SBMC") also filed a Joint Motion to Dismiss the Claims One, Two, and Four of the TAC (the "SBMC Motion"), joined by

1  all Defendants, including Defendant GMAC Mortgage, LLC ("GMAC"). (D.E. 169.)  After
2  considering the arguments submitted, the Motions are GRANTED in part and DENIED in part.

**BACKGROUND**

The following factual allegations are taken from the TAC, and as it must for this Motion, the Court assumes them to be true.

On August 10, 2006, Plaintiff refinanced her existing home loan and entered into an Option ARM loan agreement (the "Note") with SBMC. (TAC ¶ 4.) GMAC serviced the Note. (TAC ¶ 5.) SBMC promoted, marketed, and distributed the Note. (TAC ¶ 6.) The RBS Defendants acquired the Note from SBMC, securitized it, and assigned it to Deutsche Bank as trustee of the Harborview Trust. (TAC ¶¶ 8-10.)

On October 29, 2007, Plaintiff filed her Complaint in this Court. She later voluntarily withdrew her Complaint and filed a First Amended Complaint ("FAC"). Plaintiff and Defendants then stipulated for leave to file the Second Amended Complaint ("SAC"). Plaintiff filed the SAC, in which she alleged five claims for relief, numbered as follows: (1) violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"); (2) fraudulent omissions; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) violation of California unfair competition law, Business & Professions Code § 17200 et seq. ("UCL").

Defendants moved to dismiss the SAC, and this Court granted their motions, with leave to amend, as to the first claim, for TILA violations; the second claim, for fraudulent omissions; and the fourth claim, for breach of implied covenant of good faith and fair dealing. (Order Granting in Part and Denying in Part Defendants' Motions to Dismiss Plaintiff's SAC, March 31, 2009 ("March 31, 2009 Order"), D.E. 122.) The Court denied the Motions as to Plaintiff's third claim, for breach of contract, and fifth claim, for violation of the UCL. Plaintiff and GMAC filed motions for reconsideration of the March 31, 2009 Order. The Court denied GMAC's motion to reconsider. (Order re Plaintiff and GMAC's Motions to Reconsider, June 30, 2009

1 ("June 30, 2009 Order"), D.E. 146.)  The Court granted Plaintiff's motion to reconsider, but after
2 reconsidering, did not change the March 31, 2009 Order.  (June 30, 2009 Order.)
3      Plaintiff had filed an earlier Third Amended Complaint, as well as a Corrected Third
4 Amended Complaint, on July 22, 2009.  The parties stipulated to allow Plaintiff to file the
5 Further Corrected Third Amended Complaint, the TAC at issue here, and Plaintiff did so on
6 October 26, 2009.  In the TAC, Plaintiff alleges four claims, numbered as follows:  (1) violations
7 of TILA; (2) fraudulent omissions; (3) breach of contract; and (4) violations of the UCL.
8 Defendants now move to dismiss.

**LEGAL STANDARD**

     A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "'[D]etailed factual allegations' are not required."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff.  *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010); *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

     But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).  A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Dismissal

3

1 without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the
2 complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th
3 Cir. 2003).

**PRELIMINARY ISSUE**

SBMC requests that the Court take judicial notice of five documents. These documents would not change the Court's analysis, so the request is DENIED as moot.

**ANALYSIS**

**1.    PLAINTIFF'S FIRST CLAIM, FOR TILA VIOLATIONS**

Plaintiff's first claim is for TILA violations and is brought against SBMC, Harborview Trust, the RBS Defendants, and Deutsche Bank. Plaintiff alleges that Defendants failed to make mandatory disclosures in violation of TILA. TILA requires lenders to disclose clearly and accurately all the material terms of a credit transaction. 15 U.S.C. § 1601 *et seq*. TILA provides borrowers with two remedies for a lender's disclosure violations: (1) rescission under 15 U.S.C. § 1635, and (2) damages under 15 U.S.C. § 1640. *See Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034, 1038 (C.D. Cal. 2008). Here, Plaintiff fails to state a TILA claim for either rescission or damages.

**1.1    Claim for rescission**

To state a claim for rescission under TILA, a plaintiff must allege the ability to return to the lender the principal of the mortgage loan minus all interest and fees paid to the creditor. *Semar v. Platte Valley Federal Savings and Loan*, 791 F.2d 699 (9th Cir. 1986). Under the literal language of 15 U.S.C. § 1635(b), a consumer exercising the right of rescission need not

return the principal of the loan to the creditor until *after* the creditor has released the security interest. *See* 15 U.S.C. § 1635(b). But the last sentence of that section states that "the procedures prescribed by this subsection shall apply except when otherwise ordered by a court." 15 U.S.C. § 1635(b). That sentence has been interpreted to allow courts to demand that the borrower return the loan's principal balance to the creditor before rescission is granted. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171 (9th Cir. 2003) (courts have the power to confirm that the borrower "could repay the loan proceeds before going through the empty (and expensive) exercise of a trial on the merits"); *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir. 1976) (courts may exercise "traditional equity powers" and "condition the Borrower's continuing right of rescission upon their tender to the lender of all the funds spent by the lender"). This Court has embraced the policy that "a plaintiff cannot state a claim for rescission under TILA without at least alleging that [the plaintiff] is financially capable of returning the principal of the loan." *Farmer v. Countrywide Financial Corp.,* No. SACV 08-1075 AG (RNBx), 2009 WL 1530973, at *5 (C.D. Cal. May 18, 2009).

In the March 31, 2009 Order, this Court dismissed Plaintiff's TILA claim, with leave to amend, because she had "not alleged that she has tendered or is financially capable of tendering the principal of her loan minus the appropriate interest and fees." (March 31, 2009 Order 6:7-9.) In the TAC, Plaintiff now alleges that "Plaintiff could, if the Court requires it and subject to equitable accommodations made to Plaintiff by the Court, repay the original principal amount of her loan, less any damages awarded, all interest paid through the date of the rescission order and fees paid at the original closing." (TAC ¶94.) Plaintiff explains that "subject to equitable accommodations" means that Plaintiff would like "to satisfy [her] tender obligation by making payments over time." (Opp'n to SBMC's Motion 34:1-2.) Accordingly, the allegation that Plaintiff "could" repay the original principal "subject to equitable accommodations" is not an allegation that Plaintiff is presently "financially capable of returning the principal of the loan." *See Love v. First Mortg. Corp.*, EDCV 08-0060 AG (CTx), 2009 WL 4980323, at *3 (C.D. Cal. Dec. 14, 2009) (holding that an allegation that plaintiffs "should be able to obtain another mortgage or such other repayment arrangements as this Court determines are appropriate" did

5

1  "not amount to an allegation that they are financially capable of returning the principal of the
2  loan"). Because Plaintiff has not alleged that she is financially capable of returning the principal
3  of the loan, Plaintiff's TILA rescission claim fails.

### 1.2 Claim for damages

An action for damages under TILA must be brought within one year of the alleged violation. 15 U.S.C. § 1640(e). The violation occurs upon consummation of the loan. *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1258 (D. Colo. 2004). A loan is deemed consummated at "the time a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). In this case, the loan was consummated on August 10, 2006. This action was filed on October 29, 2007, outside of the one-year statute of limitations for damages claims under TILA.

Plaintiff argues, for the first time in this Motion, that there is an "open question as to when the statute of limitations on a TILA damages claim based upon lenders' failure to disclose credit terms accrues." (Opp'n to SBMC Motion 28:27-29:1.) Plaintiff cites *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003), to support her premise. The *Meyer* court stated:

> There is some debate on whether the period of limitations commences on the date the credit contract is executed, *see Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973), or at the time the plaintiff discovered, or should have discovered, the acts constituting the violation, *see NLRB v. Don Burgess Construction Corp.*, 596 F.2d 378, 382 (9th Cir.1979). But we need not decide this question here, because even under the more expansive *Don Burgess* rule, the one-year period has run. *See Katz v. Bank of California*, 640 F.2d 1024, 1025(9th Cir.1981).

*Id.* at 902. But the *Don Burgess* case, cited by the *Meyer* court as a case where the statute commenced at the time the plaintiff discovered, or should have discovered, the acts constituting the violation, concerned the National Labor Relations Act, not TILA. *Don Burgess*, 596 F.2d at 382. Plaintiff does not cite any case involving TILA claims holding that the statute of

1 limitations begins to run when the plaintiff discovers the violation. Conversely, numerous courts
2 have held, both before and after *Meyer*, that the TILA statute of limitations begins to run when
3 the contract is executed, not on the date that the violation is discovered. *See*, *e.g.*, *Monaco v.*
4 *Bear Stearns Residential Mortgage Corp.*, 554 F. Supp. 2d 1034, 1039 (C.D. Cal. 2008);
5 *Betancourt*, 344 F. Supp. 2d at 1258.

6       Plaintiff also argues, as she did when opposing the previous motions to dismiss, that the
7 statute of limitations on her damages claim should be equitably tolled. The doctrine of equitable
8 tolling may suspend the limitations period until a plaintiff has a reasonable opportunity to
9 discover the nondisclosure forming the basis of her TILA action. *See Heagerty v. Home Sav.*
10 *Am., F.A.*, 968 F.2d 1220 (9th Cir. 1992); *King v. State of California*, 784 F.2d 910, 915 (9th Cir.
11 1986). "Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct
12 by the defendant to prevent the plaintiff from suing. Instead, it focuses on whether there was
13 excusable delay by plaintiff." *Santa Maria v. Pacific Bell*, 202 F.3d 1170 (9th Cir. 2000); *see*
14 *also Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001). Excusable delay occurs when "a
15 reasonable plaintiff would not have known of the existence of a possible claim within the
16 limitations period." *Leong v. Potter*, 347 F.3d 1117, 1123 (9th Cir. 2003); *Santa Maria*, 202
17 F.3d at 1170. "The burden of alleging facts which would give rise to tolling falls upon the
18 plaintiff." *Hinton v. Pacific Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). "That burden does not
19 arise only after a motion to dismiss; rather, the plaintiff 'must plead with particularity the
20 circumstances surrounding the concealment and state facts showing his due diligence in trying to
21 uncover the facts.'" *Id.* (citing *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir.
22 1980).

23       Here, Plaintiff's only allegation concerning her reason for failing to timely file is that "it
24 was not until at least the second monthly mortgage statement, received nearly 3 months into the
25 loan term, that the true facts regarding the loans became discoverable." (TAC ¶ 62 (d).) But
26 Plaintiff does not state "with particularity . . . facts showing [her] due diligence in trying to
27 uncover the facts." *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th
28 Cir. 1978). In fact, Plaintiff alleges that the "violations of TILA and Regulation Z described in

this Complaint are objectively and reasonably apparent on the face of the documents provided to Plaintiff and Class Members, because the disclosures provided can be determined to be incomplete and inaccurate by a comparison among the [Truth in Lending Disclosure Statement], the other disclosure statements, and the Note." (TAC ¶ 90.)  The allegation that the violations were "objectively and reasonably apparent on the face" of the documents Plaintiff received when his loan closed defeats Plaintiff's equitable tolling argument.  Specifically, a reasonable plaintiff exercising due diligence would have known of the existence of a possible claim if the violations were "objectively and reasonably apparent on the face," (TAC ¶ 90), of the documents received at the loan closing.  *See Jozinovich v. JP Morgan Chase Bank N.A.*, No. C09-03326 TEH, 2010 WL 234895, at *4 (N.D. Cal. Jan. 14, 2010) (allegations that TILA violations "were apparent on the face" of loan documents defeated equitable tolling doctrine); *Ung v. GMAC Mortgage, LLC*, No. EDCV 09-893-VAP (OPx), 2009 WL 2902434, at *2 (C.D. Cal. Sept. 4, 2009) (no equitable tolling when plaintiff's complaint "state[d] the 'violations' of TILA for which [the plaintiff sought] damages '[were] apparent on the face' of the documents").

Thus, even ignorance of TILA or lack of sufficient expertise to understand loan terms is not sufficient to show the "due diligence" required to apply the equitable tolling doctrine.  *See King*, 784 F.2d at 914 ("the very existence of TILA imputes to the borrower knowledge of his rights"). *Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (holding that equitable tolling did not apply when "nothing prevented [the plaintiff] from comparing the loan contract, [the defendant's] initial disclosures, and TILA's statutory and regulatory requirements"); *see also Curtis v. Option One Mortgage Co.*, No. 109-cv-1608 AWI SMS, 2010 WL 599816, at * 8 (E.D. Cal. Feb. 18, 2010) (allegation that only an expert could have discovered TILA claims "is not an excusable delay sufficient to invoke [the] court's application of equitable tolling").

Because Plaintiff has failed to state a viable claim for either rescission or damages under TILA, Defendants' Motions are GRANTED as to the first claim.

**2. PLAINTIFF'S SECOND CLAIM, FOR FRAUDULENT OMISSIONS**

Plaintiff brings her second claim, for fraudulent omissions, against SBMC, Harborview Trust, the RBS Defendants, and Deutsche Bank.

Fraud claims must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires enough specificity to give a defendant notice of the particular misconduct to be able to defend against the charge. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). Rule 9(b) serves many purposes. One is to "furnish the defendant with certain definite charges which can be intelligently met." *Kincade v. Trojan Express, LLC*, No. SACV 08-1362 AG (ANx), 2009 WL 799390, at *2 (C.D. Cal. Mar. 23, 2009). Other purposes include "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from 'unilaterally imposing upon the court, the parties, and society enormous social and economic costs absent some factual basis.'" *Anderson v. Clow* (*In re Stac Elecs. Sec. Litig.*), 89 F.3d 1399, 1405 (9th Cir. 1996) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).

To comply with Fed. R. Civ. P. 9(b), a plaintiff must plead "with particularity" the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 & n.7 (9th Cir. 1994) (en banc); *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 405 (9th Cir. 1991); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (holding that Rule 9(b) requires a plaintiff to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (to satisfy the specificity requirement, "the who, what, when, where, and how" of the misconduct must be alleged) (citations omitted).

Here, Plaintiff pled her fraudulent omissions claim with sufficient specificity. Under California law, a fraudulent omission exists only when the defendant had a duty to disclose.

1  This duty arises in four circumstances: (1) when the defendant is in a fiduciary relationship with
2  the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the
3  plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4)
4  when the defendant makes partial representations but also suppresses some material fact.
5  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997).  Plaintiff does not assert
6  that she and Defendants were in a fiduciary relationship, so the first circumstance does not
7  apply.          To satisfy the second, third, or fourth circumstances, a plaintiff must plead the
8  existence of material information.  To show that information is material, a plaintiff must
9  adequately plead that "had the omitted information been disclosed," the reasonable consumer
10 would have "been aware of it and behaved differently."  *Mirkin v. Wasserman*, 5 Cal. 4th 1082,
11 1093 (1993); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360
12 (2003).  In the June 30, 2009 Order, this Court held that Plaintiff failed to state a claim for
13 fraudulent omissions because "Plaintiff [did] not adequately allege that, had the omitted
14 information been disclosed, Plaintiff would have been aware of it and behaved differently."
15 (June 30, 2009 Order 5:26-27.)  Defendants argue that "Plaintiff still does not adequately allege
16 any material omission sufficient to satisfy the *Judkins* factors."  (SBMC Motion 38:26-27.)  The
17 Court disagrees.  Plaintiff alleges specific supporting facts demonstrating that Plaintiff would not
18 have purchased the loan products had she understood the nature of her loan.  (*See, e.g.*, TAC ¶¶
19 30-36.)  For example, Plaintiff alleges that had she known that negative amortization was certain
20 to occur, rather than a mere possibility, she would not have obtained this loan.  (TAC ¶ 32.)
21         Plaintiff also alleges the role of each Defendant in the omissions.  Specifically, Defendant
22 SBMC was the originator of Plaintiff's loan and provided the loan documents.  (TAC ¶ 107.)
23 Plaintiff also alleges that the RBS Defendants, Deutsche Bank, and Harborview Trust "prepared
24 and/or approved the . . . loan documents and disclosures, and directed SBMC to use" them.  (*Id.*)
25         Finally, Plaintiff sufficiently alleges facts demonstrating that Defendants made partial
26 representations in the disclosures and also suppressed material facts, thus satisfying the fourth
27 circumstance under *Judkins*.  (*See, e.g.*, TAC ¶¶ 106-13.)  For example, Defendants disclosed
28 that the monthly payment "could be less than the amount of the interest portion of the monthly

10

1 payment" but did not disclose that the monthly payment amount set forth in the payment
2 schedule "could not possibly cover the amount of interest due under any conceivable index rate .
3 . . ." (TAC ¶ 109.)

4 In sum, Plaintiff provides sufficient factual allegations to state a claim for fraudulent
5 omissions and provide Defendants with "certain definite charges which can be intelligently
6 met." *Kincade*, 2009 WL 799390, at *2. The Motion is DENIED as to Plaintiff's second claim.

**3. PLAINTIFF'S FOURTH CLAIM, FOR VIOLATIONS OF BUSINESS & PROFESSIONS CODE § 17200** *et seq.*

Plaintiff's fourth claim is for violations of the UCL, and is brought against all defendants. In the March 31, 2009 Order, this Court denied Defendants' motions to dismiss as to Plaintiff's UCL claim. Under the law of the case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997); *see also United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004) ("The law of the case doctrine precludes a court from reconsidering an issue that it has already resolved. Issues that a district court determines during pretrial motions become law of the case."). Thus, the Court does not consider Defendants' arguments against Plaintiff's UCL claim, and Defendants' Motions are DENIED as to the fourth claim for relief.

**DISPOSITION**

The Motions are GRANTED IN PART and DENIED IN PART. Plaintiff has now had at least three attempts to plead viable TILA claims. The Court is satisfied that the deficiencies of the complaint cannot be cured by amendment. *Jackson*, 353 F.3d at 758.

1  Accordingly, the Motions are GRANTED without leave to amend as to Plaintiff's first
2  claims. The Motions are DENIED as to Plaintiff's second claim, for fraudulent omissions, and
3  Plaintiff's fourth claim, for UCL violations.

5  IT IS SO ORDERED.
6  DATED: September 13, 2010

_____
Andrew J. Guilford
United States District Judge
_____
Andrew J. Guilford
United States District Judge